UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Frank D. Postle

    v.                              Civil No. 18-cv-224-JL
                                             Opinion No. 2019 DNH 026

SilkRoad Technology, Inc.

**MEMORANDUM ORDER**

This motion for spoliation-related sanctions turns on whether an employee intentionally deleted information relating to both his claims and his employer's counterclaims from his work-issued laptops before returning them. Plaintiff and counterclaim-defendant Frank Postle, a former IT administrator for defendant and counterclaim-plaintiff SilkRoad Technology, deleted information from his assigned Dell laptop and a Microsoft Surface Book laptop and reset the Dell to factory default before returning both devices to SilkRoad. SilkRoad contends that both devices contained information relevant to Postle's wage claim under N.H. Rev. Stat. Ann. § 275:44 and SilkRoad's counterclaims for breach of contract, fraudulent concealment, and tortious interference with economic advantage premised on the theory that Postle engaged in or supported hacking activities against the company. SilkRoad also contends that a private Virtual Machine that Postle deleted also contained information relevant to its counterclaims.

After hearing oral argument and testimony from the plaintiff,[1] the court grants SilkRoad's motion in part.  Postle intentionally deleted information related to the parties' claims from his Dell laptop, despite being aware of — and himself invoking — the potential for litigation at the time.  Concluding that Postle intentionally spoiled relevant evidence unobtainable elsewhere, the court may presume that the information deleted from his Dell laptop was unfavorable to Postle and may so instruct the jury at trial.  The court also awards SilkRoad a portion of its attorneys' fees and costs accrued in bringing and litigating its spoliation motion.

## I. __Applicable legal standard__

Federal Rule of Civil Procedure 37(e) governs a party's failure to preserve electronically stored information such that it "cannot be restored or replaced through additional discovery."  If the court finds "prejudice to another party from loss of the information," it "may order measures no greater than necessary to cure the prejudice."  Id. Rule 37(e)(1).  If the court finds "that the party acted with the intent to deprive another party of the information's use in the litigation," it may impose one of three sanctions.  Id. Rule 37(e)(2).  It may

---

[1] While the court does not generally hear evidence on discovery-related motions, it permitted Postle to testify in light of his repeated request to do so.  E.g., Obj. (doc. no. 30-29) at 6.

"presume that the lost information was unfavorable to the party; instruct the jury that it may or must presume the information was unfavorable to the party; or dismiss the action or enter a default judgment." Id.

SilkRoad, as the moving party, bears the burden of proving the threshold requirements that relevant evidence has been lost and cannot be replaced, that it should have been preserved, and that it was not preserved because Postle failed to take reasonable steps to preserve it. See Watkins v. New York City Transit Auth., No. 16 CIV. 4161 (LGS), 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018). It is also SilkRoad's burden to prove that Postle acted with the intent to deprive it of use of that evidence in this litigation. See id. "The rule does not," however, "place a burden of proving or disproving prejudice [under Rule 37(e)(1)] on one party or the other." Fed. R. Civ. P. 37(e)(1), advisory committee's note to 2015 amendment.

The quantum of evidence by which SilkRoad must meet these burdens is unresolved. Some courts have required that spoliation be proven by only a preponderance of the evidence. See Watkins, 2018 WL 895624, at *10. The First Circuit Court of Appeals has in the past applied a clear-and-convincing standard to discovery misconduct resulting in severe sanctions. See Anderson v. Cryovac, Inc., 862 F.2d 910, 926 (1st Cir. 1988). Citing Anderson, a court in this Circuit has applied that clear-

and-convincing standard to Rule 37(e) sanctions.  See Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., No. CV 13-33WES, 2019 WL 118412, at *5 (D.R.I. Jan. 7, 2019) (Sullivan, M.J.).

## II.  **Background**

SilkRoad employed Postle in an information-technology role for about fifteen years.  In March 2017, Postle began to work for SilkRoad pursuant to a contract with a stated term of March 6 to June 19, 2017.[2]  Under this contract, Postle worked from home and remotely accessed SilkRoad's computer system.

About a month into that contract, on April 4, an unidentified and unauthorized individual accessed SilkRoad's computer system and sent an email to its employees, board of directors, and customers that appeared to come from its CEO, John Shackleton.  SilkRoad suspended Postle's work and his ability to access its computer systems two days later in light of a suspected connection between Postle and the hacker.  It informed him that his contract was "hereby suspended pending investigation."[3]

---

[2] Postle premises his wage claim on the argument that he remained an employee after beginning to work under this contract; SilkRoad argues that the contract rendered him an independent contractor.  The court takes no position on the viability of either claim or defense in resolving this motion and its use of terms such as "employer," "employee," or "contractor" should not be taken as such.

[3] Postle Decl. Ex. 5 (doc. no. 30-8).

On April 12, 2017, SilkRoad requested that Postle return four devices that he used for work:  a Dell laptop, a Surface Book tablet, an iPad, and an iPhone.  Specifically, SilkRoad requested he "return SilkRoad's assets," which "consist of" those four devices.[4]  Its attorneys followed up with an emailed letter on April 14, reiterating the request that Postle return those four devices and including the following litigation-related language:

> In addition, we wish to remind you of your obligations with regard to Silkroad [sic] property, which includes the preservation of any information, messages, e-mails, documents or other materials on these devices. You may not destroy or delete any such information on such a device without our express authorization.[5]

According to Postle, he did not read — or, at least, did not appreciate the import of — this language until April 17.  At some point between April 12 and April 17, Postle deleted his user profile from the Dell and browsing history and other data from the Surface Book.[6]  Postle testified at the hearing that he deleted the information in such a way as to render it unrecoverable.  He also began to restore both devices to their

---

[4] Postle Decl. Ex. 4 (doc. no. 30–7).

[5] Postle Decl. Ex. 14 (doc. no. 30–17).

[6] During his deposition, he testified that he deleted his user profile from the Surface Book as well.  At the hearing, he revised that testimony, claiming that he only deleted personal files and browsing history from that device.

factory settings, a process that, both parties agree, renders deleted information functionally unrecoverable.

He completed the process on the Dell, though he testified at the hearing, consistent with an April 17 email, that he interrupted the factory reset on the Surface Book upon realizing that SilkRoad wanted him to retain all data on the devices. He claimed he was able to load the Surface Book after interrupting the reset. When SilkRoad and its experts have attempted to recover data from the Surface Book, however, they have encountered BitLocker encryption.[7] Postle's testimony concerning just when BitLocker was enabled on the Surface Book has undergone several iterations. During his deposition, he testified that he enabled it shortly after the April 6, 2017 attack on SilkRoad's systems.[8] This is consistent with a search he ran on April 4, 2017, on how to "convert existing drive to bitlocker."[9] In his deposition errata and at the hearing, on the other hand, he revised his position to claim that it had been

---

[7] Parisi Decl. (doc. no. 25) ¶¶ 10-12. BitLocker is an encryption program built into certain versions of Microsoft Windows. Under certain circumstances, when activated, a user must enter a password as the computer loads. This password is known as a recovery key.

[8] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 50.

[9] Parisi Decl. Ex. 1 (doc. no. 25-1).

enabled around June 20, 2016.[10]  In any event, Postle confirmed that he discarded the recovery key at some point after it was enabled; and because he did so, SilkRoad has not been able to access any data that may remain on that device.[11]

On May 1, 2017, Postle noticed suspicious activity directed against the Virtual Machine that he used to access his personal email server.[12]  That day, he emailed SilkRoad and, among other things, informed them about this activity.[13]  SilkRoad's counsel responded the next day, reminding Postle of his duty to preserve information "on [his] Apple backup," but without mentioning the Virtual Machine.[14]  Postle then deleted the Virtual Machine.  By doing so, Postle testified, he did not delete any emails from his account.  SilkRoad argues, instead, that he deleted any data relating to the source of the potential hack of that Virtual Machine.  He received an email on May 5 from the purported hackers, claiming he had foiled their efforts.[15]

---

[10] Douthitt Decl. Ex. 1 (doc. no. 35-2).

[11] Parisi Decl. (doc. no. 25) ¶¶ 10-12.

[12] A virtual machine "is a way of emulating the functionality of a physical computer using software."  SilkRoad's Mem. (doc. no. 24-1) at 3 n.1.  Postle had Microsoft Outlook, software used to send and receive email, installed on the Virtual Machine.

[13] Goldberg Decl. Ex. 9 (doc. no. 26-3).

[14] Id.

[15] Goldberg Decl. Ex. 11 (doc. no. 26-3).

III. **Analysis**

    A.    **Threshold requirements**

    The party moving for spoliation-related sanctions must establish, by clear-and-convincing evidence, see Wai Feng, 2019 WL 118412, at *5, the following threshold requirements: (1) that relevant electronically-stored information (ESI) has been lost and cannot be restored or replaced through additional discovery; (2) that it should have been preserved; and (3) that it was not preserved because a party failed to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e). Here, SilkRoad has satisfied these threshold requirements with respect to the Dell laptop and Surface Book. The court is not satisfied that it has done so with respect to the Outlook Virtual Machine.

        1.    **Lost ESI**

    SilkRoad "must establish, first, that ESI has been lost and is not available in any other location." Wai Feng, 2019 WL 118412, at *5. This further requires SilkRoad to demonstrate that information relevant to the claims at issue existed on the devices, was removed from those devices, and does not exist anywhere else. SilkRoad has made this showing with respect to all three devices.

    Information relevant to both Postle's wage claim and SilkRoad's counterclaims probably existed on the Dell laptop and Surface Pro, including information concerning Postle's search

histories,[16] when he edited his LinkedIn profile to reflect self-employment,[17] and the history of his remote access to SilkRoad's systems.[18]  Though Postle argued that no relevant information existed on those devices because he used them solely to remotely access his workspace on SilkRoad's systems, he testified at the hearing that he used the devices for other purposes — including to conduct internet searches — and that information such as his search history is neither backed up nor available elsewhere.

With respect to the Dell, Postle conceded at the hearing that he deleted his search history, user profile, and temporary files.  He further admitted that he completed a factory reset, rendering any information the device previously held unrecoverable.

Postle also deleted information on the Surface Book.  He testified during his deposition that he deleted his user profile and temporary files from his Surface Book.[19]  At the hearing,

---

[16] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 31-32.

[17] Id. at 144-46.

[18] Id. at 32-33.  Postle suggests that SilkRoad possesses at least this information, which it may well with respect to any authorized remote access of SilkRoad's systems.  While this may be true with respect to authorized access of SilkRoad's systems, it would not have complete information concerning unauthorized access — or to establish the lack of such access — from Postle's devices without information on those devices.

[19] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 150-51, 172-73.

however, he testified that he deleted only his personal files and search history, and did not delete the user profile. He further testified that he did not complete a factory reset of the Surface Book, once he realized his obligation to preserve information, and that he was able to access the data remaining on the device before he returned it to SilkRoad.[20]

Finally, SilkRoad has raised an inference that information relevant to its counterclaims may have existed on Postle's Outlook Virtual Machine.[21] Specifically, Postle claims that his Virtual Machine was targeted by the same individuals who attacked SilkRoad.[22] He reported some information concerning the attack — including the manner of it and the IP address of the attacker — to SilkRoad after it occurred.[23] Such information certainly relates to whether or not Postle participated in some manner in the attacks; additional forensic information along that line may well have been obtained from the Virtual Machine had Postle not deleted the Virtual Machine entirely.[24]

---

[20] See Goldberg Decl. Ex. 1 (doc. no. 26-1) at 151.

[21] See SilkRoad Mem. (doc. no. 24-1) at 19-20.

[22] See Goldberg Decl. Ex. 11 (doc. no. 26-3).

[23] Goldberg Decl. Exs. 9-10 (doc. no. 26-3).

[24] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 69-70.

Accordingly, SilkRoad has demonstrated that ESI, relevant to both parties' claims, has been lost and is not available through other discovery.

### 2.   Duty to preserve

Second, SilkRoad must demonstrate that the lost ESI should have been preserved. Wai Feng, 2019 WL 118412, at *5. This requires a showing that, at the time Postle deleted the ESI, he knew or reasonably should have known about the pending litigation and that his ESI would be relevant to that litigation. Id. SilkRoad has made this showing with respect to the Dell and Surface Book, but not with respect to the Virtual Machine.

Postle began deleting information from his Dell and Surface Book at some point after receiving the April 12 email requesting that he return them. As discussed supra, information on those devices was relevant to his wage claim. He reasonably should have been aware of the potential for litigation over his wage claim before that day.

SilkRoad suspended his contract on April 6.[25] Four days later, Postle emailed SilkRoad's head of human resources to explain that, despite the suspension, he considered the contract

---

[25] Goldberg Decl. Ex. 3 (doc. no. 26-3).

active "[a]bsent of termination for cause . . . ."[26]  At the hearing, he testified that, as of this time, he did not believe he had done anything that constituted cause for termination of the contract.

Postle certainly contemplated litigation over that claim no later than April 13, 2017, when he responded to the April 12 email requesting that he return the Dell and Surface Book by claiming to have "contracted an attorney," who "recommended that I do not return anything until such time that I am fully paid on the contract that you have suspended."[27]  While the record is unclear as to whether Postle deleted information from the Dell and Surface Book before sending that April 13 email, he appears to have been in the process of doing so at the time he sent it. An hour after sending it, and after being informed that SilkRoad sought information from other domain administrators' hard drives, Postle responded:  "They should have asked for that.  I am busy clearing off my machines to return them.  They are going

---

[26] Goldberg Decl. Ex. 4 (doc. no. 26-3).

[27] Postle Decl. (doc. no. 30-3) ¶¶ 38-39; Postle Decl. Ex. 7 (doc. no. 30-10).  Postle now claims that he had not in fact contracted (or contacted) an attorney at that time and that his statement was a "bluff on [his] part to get [his] contract paid."  Postle Decl. (doc. no. 30-3) ¶ 39.  Regardless of its veracity, that he made the statement at all demonstrates that Postle contemplated that legal action may be necessary to resolve the wage dispute.

to be unhappy with the image on my dell as I just deleted my SilkRoad user profile."[28]  In deposition, he clarified that, at the time he sent this text, he had deleted information but had not yet begun to reset the Dell or Surface Book to factory default.[29]

Postle began deleting information from his Dell and Surface Book no earlier than April 12, two days after his email contesting whether SilkRoad had "cause" to suspend his contract. He reasonably should have been aware of the potential for litigation for resolving his wage claim at this time.

And though Postle admits that he had not actually contacted an attorney as of April 13,[30] his invocation of counsel, his demand for full payment on the contract, and his awareness that SilkRoad would be "unhappy" with the reset of his devices on that day suffice to demonstrate that Postle was unquestionably aware of the potential for litigation concerning his wage claim and of the existence of information relevant to that litigation on those devices before he initiated the factory reset to permanently remove it from the Dell.[31]

---

[28] Postle Decl. Ex. 8 (doc. no. 30-11).

[29] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 172-73.

[30] See supra n.24.

[31] Postle received a letter from SilkRoad's counsel on April 14, 2017, informing him of his duty to preserve information on his Dell and Surface Book.  The court credits his explanation, given

SilkRoad has not, however, carried its burden of demonstrating that Postle should have anticipated litigation over the attacks on SilkRoad's systems at the time that he deleted his Outlook Virtual Machine sometime between May 1 and May 3, 2017.[32]  The Virtual Machine was not, as Postle observes, included in the April 14 litigation hold letter or in a May 2, 2017 reminder of his obligations under that letter.

SilkRoad argues that Postle "appreciated the possibility of litigation prior to the deletion of the Outlook [Virtual Machine]" because he refused, on May 1, 2017, to produce backups from other devices without a court order.[33]  To the extent that he anticipated litigation at that juncture, however, it appears to have been with respect to his wage claim.  SilkRoad points to no evidence or testimony demonstrating clearly and convincingly that Postle should have known that SilkRoad would bring contract- and tort-based claims against him at that time.  While he acknowledged, on April 4, 2017, that one of the hacker's

---

at the hearing, that he did not fully read it or comprehend its import until April 17, after he had deleted information from the Dell and Surface Book.  This is immaterial, however, because the court concludes that his duty to retain information related to his wage claim arose before that day.

[32] To the extent that Postle's Outlook Virtual Machine contained relevant ESI, that information derives from the attempted attack on Postle's personal email and thus is related only to SilkRoad's counterclaims.

[33] SilkRoad Mem. (doc. no. 24-1) at 7.

emails "totally looks like [Postle] generated it"[34] and that his wife thought "they are going to be after" Postle for the attack,[35] this evidence suggests only that he recognized he may be a subject of SilkRoad's investigation. Two weeks later, he told SilkRoad that he sought the advice of counsel with respect to his contract, but that he did not "intend to retain a [sic] attorney related to [its] investigation,"[36] suggesting that he did not contemplate litigation arising out of the investigation at that time. He further testified at the hearing that he did not, as of May 1, anticipate litigation on that subject.

Even if he anticipated litigation generally concerning the attacks on SilkRoad's systems, SilkRoad has not demonstrated that Postle should have been aware of the relevance to that litigation of data derived from the attack on the Outlook Virtual Machine. At the hearing, Postle testified that, at the time the attack on his own system occurred, he believed it to be connected to a password that was compromised in 2016. This testimony is consistent with an email he sent to to SilkRoad at the time of the attack.[37] It was only several days after he

---

[34] Parisi Decl. Ex. 2 (doc. no. 25-1).

[35] Id.

[36] Goldberg Decl. Ex. 7 (doc. no. 26-3) at 063.

[37] Goldberg Decl. Ex. 10 (doc. no. 26-3).

deleted his Virtual Machine that the attackers emailed him, claiming responsibility.[38]  Based on the evidence presented, to conclude that Postle knew the attack on his system was connected to that on SilkRoad at the time it occurred requires presupposing that Postle conducted or participated in the latter attack — a conclusion the court is not prepared to draw at this stage in the litigation.

### 3.  Reasonable steps

Third, SilkRoad must demonstrate that Postle "failed to take reasonable steps to preserve" the ESI after he was or reasonably should have been aware of its relevance to impending litigation.  Fed. R. Civ. P. 37(e).  In this case, taking reasonable steps to preserve the information required, as a bare minimum, that Postle leave the devices in the state in which they existed on April 12, 2017, without taking affirmative steps to alter that state.  Instead, as described supra, Postle took active steps to delete relevant information from both the Dell and Surface Book.  SilkRoad has therefore satisfied this element.

---

[38] Goldberg Decl. Ex. 11 (doc. no. 26-3).

**B.  Intent**

The court next considers "whether the loss of the ESI has caused prejudice or whether the party in possession acted 'with the intent to deprive another party of the information's use in the litigation.'" Wai Feng, 2019 WL 118412, at *6 (quoting Fed. R. Civ. P. 37(e)(1)-(2)).  If Postle acted with the requisite intent, no prejudice need be proven.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  This "intent requirement . . . is 'stringent' — it must be based on more than just negligence or even gross negligence in producing or preserving ESI." Wai Feng, 2019 WL 118412, at *7.  And SilkRoad bears the burden of proving it.

**1.  Dell laptop**

Here, SilkRoad has demonstrated that Postle intended to deprive SilkRoad of the use of information on the Dell laptop by deleting it and restoring the laptop to its factory default, rendering any deleted information unrecoverable.  Even if he began deleting the information before he realized that SilkRoad sought the return not only of the laptop but also of the information it contained, as he contends, he continued his deletion activities on the Dell laptop after coming to that realization.  Specifically, on April 13, after learning that SilkRoad sought the data from other domain administrators, he texted a former colleague: "They should have asked for that.  I

am busy clearing off my machines to return them.  They are going to be unhappy with the image on my dell as I just deleted my SilkRoad user profile."[39]  Despite demonstrating the understanding, through this message, that SilkRoad sought the information on the laptop as well as the device itself, Postle initiated a factory reset that rendered any remaining data unrecoverable after he sent it.[40]

### 2.  Surface Book

The record is less clear with respect to Postle's intent concerning the Surface Book.  While he admitted to deleting information such as his personal files and search history from the device, he did not delete his user profile, as he had with the Dell laptop, and it is unclear from the record whether he deleted those files before or after becoming aware that SilkRoad sought the data on his devices on April 13.  Furthermore, he consistently testified that he did not conduct a factory reset on the Surface Book and that he was able to access the data on that device before he returned it to SilkRoad.  The BitLocker

---

[39] Postle Decl. Ex. 8 (doc. no. 30-11).

[40] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 172-73.  Postle claimed in deposition that he deleted information from the Dell and Surface Book pursuant to SilkRoad company practice.  Id. at 198-200.  SilkRoad has demonstrated, however, that no policy exists requiring or requesting employees or contractors to remove data before returning their devices.  See id.

encryption on the Surface Book, of course, has more or less the same effect as deleting information — SilkRoad is unable to access it either way.

But SilkRoad has not demonstrated by clear and convincing evidence that Postle intentionally enabled that encryption before returning the device, to prevent SilkRoad from accessing the data. Instead, Postle has consistently testified that BitLocker was enabled on the Surface Book no later than April 6, 2017 — and thus, as discussed <u>supra</u>, before he was aware of the possibility of litigation.[41] He has also suggested several ultimately unsuccessful means by which SilkRoad might bypass the encryption[42] and offered to assist SilkRoad by searching for the recovery key. While SilkRoad's reluctance to accept further assistance from Postle is understandable at this juncture, his offers are inconsistent with an intention to permanently deprive SilkRoad of the information contained on the Surface Book.

Concluding that SilkRoad has not proven the requisite intent necessary for sanctions under Rule 37(e)(2) with respect to the Surface Book, the court turns to whether prejudice to SilkRoad warrants a remedy under Rule 37(e)(1). It is difficult to measure just how the absence of that information prejudices

---

[41] Goldberg Decl. Ex. 1 (doc. no. 26-1) at 5.

[42] <u>See</u> Parisi Decl. (doc. no. 25) ¶ 11.

SilkRoad, however, without knowing precisely what his personal files and search history contained or what information remains on the device.  And that information is unavailable so long as the Surface Book remains encrypted.  So, while the court declines to impose a separate sanction with respect to the Surface Book, should SilkRoad demonstrate at trial prejudice to proving its claims or defenses arising <u>specifically</u> from the lack of the information on the Surface Book, the court "may order measures no greater than necessary to cure [that] prejudice." Fed. R. Civ. P. 37(e)(1).

### C.    Sanction

Having concluded that Postle deleted electronically stored information from his Dell laptop with the intention of depriving SilkRoad of its use in litigation, the court may, but is not obligated to, impose one of three sanctions:  it may (a) "presume that the lost information was unfavorable to" Postle, (b) "instruct the jury that it may or must presume the information was unfavorable to" Postle, or (c) "dismiss the action or ender a default judgment." Rule 37(e)(2).

Though SilkRoad requests the most severe of these sanctions, the court is disinclined to dismiss Postle's claim or to enter default judgment against him on SilkRoad's counterclaims.  The court will, however, presume that the

evidence deleted from the Dell laptop was unfavorable to Postle and will instruct the jury at trial that it may presume likewise. The court defers composing the specific wording of those jury instructions until the time of trial.[43]

The court also finds it appropriate for Postle to bear a portion of SilkRoad's costs and attorneys' fees incurred in bringing and prosecuting this motion. Because SilkRoad's motion bore merit with respect to one-third of the devices from which it alleged that Postle deleted information, Postle shall bear one-third of SilkRoad's reasonable costs and attorneys' fees incurred in preparing and filing its papers associated with this motion and in sustaining its burden at the hearing. Because the

---

[43] After the hearing, Postle moved the court "to stay any Rule 37(e) inferential relief," requesting, in effect, an opportunity to (1) conduct further investigation into the Surface Book and (2) supplement the already voluminous briefing on this discovery motion in light of the court's expressed disinclination to grant the severe sanction SilkRoad requested. Mot. to Stay (doc. no. 50) ¶¶ 3-4, 10.

Postle seems to argue that he focused his opposition to SilkRoad's spoliation motion on the more dire of the potential consequences: default and dismissal. But Postle has been on notice that SilkRoad's motion also sought less severe sanctions and he has had ample time to conduct his investigations and to address any and all arguments raised by SilkRoad, whether "primarily," such as SilkRoad's request for default judgment, or "secondarily," such as its request for lesser sanction. Id. ¶¶ 3, 5. Furthermore, any further investigation into the Surface Book will not alter the court's conclusion as to sanctions appropriate for admitted deletions of evidence on the Dell laptop. Postle's motion is denied.

work performed by SilkRoad's expert will also be relevant to its case at summary judgment or trial, this award does not include SilkRoad's expert-related costs.  The parties and counsel are ordered to confer and agree to the amount represented by this award.  If the parties, after so conferring in good faith, cannot agree as to the amount represented by this award, SilkRoad may file an application for one-third of its reasonable costs and fees, along with any supporting documentation.

## IV.  <u>Conclusion</u>

Concluding that Postle intentionally failed to preserve electronically stored information relevant to both his claim and SilkRoad's counterclaims, the court GRANTS-IN-PART and DENIES-IN-PART SilkRoad's motion for spoliation sanctions.[44]  Postle's motion to stay this order[45] is DENIED.

Consistent with the parties' joint stipulation,[46] the existing stay of the litigation schedule is lifted and the parties shall negotiate and jointly submit a proposed, revised litigation schedule on or before **March 5, 2019.**

---

[44] Document no. 24.

[45] Document no. 50.

[46] <u>See</u> Joint Stipulation Resolving Discovery Dispute (doc. no. 23) ¶¶ 2-3.

**SO ORDERED.**

_____
Joseph N. LaPlante
United States District Judge

Dated:  February 19, 2019

cc:  Robert W. Kline, Esq.
     Lee C. Douthitt, Esq.
     Nolan Goldberg, Esq.
     Steven J. Pearlman, Esq.
     James F. Scully, Jr., Esq.
     Lucy C Wolf, Esq.